UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AMBRE P. MCGINN                                          CIVIL ACTION

VERSUS                                                   No. 11-3025

METROPOLITAN LIFE INSURANCE CO.                          SECTION I

ORDER AND REASONS

Before the Court are cross-motions[1] for summary judgment filed by plaintiff, Ambre P. McGinn, and defendant, Metropolitan Life Insurance Company ("MetLife"). For the following reasons, plaintiff's motion is **DENIED** and defendant's motion is **GRANTED**.

BACKGROUND

Plaintiff, Ambre P. McGinn, filed the complaint in the above-captioned matter "individually and on behalf of her minor children, Joseph L. McGinn, IV and Shane P. McGinn."[2] Plaintiff's children are the beneficiaries of a life insurance policy on the life of plaintiff's deceased husband, Joseph L. McGinn, III.[3] These benefits were provided pursuant to decedent's life insurance policy (the "Plan") sponsored by his former employer.[4] MetLife issued the group insurance policy that provided benefits under the Plan.[5]

Plaintiff alleges that on March 17, 2011, her husband was traveling up a traffic ramp when he was ejected from his motorcycle due to an alleged hit-and-run accident, thrown over the ramp's barrier onto the ground below, and died.[6] Although decedent's motorcycle was found at

---

[1] R. Doc. Nos. 36, 38.
[2] R. Doc. No. 1-1, at 1.
[3] R. Doc. No. 1-1, at 4; R. Doc. No. 5, at 2.
[4] R. Doc. No. 1-1, at 4; R. Doc. No. 5, at 2.
[5] R. Doc. No. 5, at 2.
[6] R. Doc. No. 1-1, at 4-5.

approximately 6:30 P.M. on March 17, 2011,[7] decedent's body was not discovered until approximately 8:00 A.M. on March 18, 2011.[8]

Plaintiff submitted a claim for life insurance and accidental death benefits under the Plan. MetLife paid life insurance benefits to plaintiff,[9] although it denied the claim with respect to the accidental death benefits.[10]

On July 14, 2014, the Court found that the Plan was governed by ERISA, that plaintiff's causes of action based on state law were preempted, and that all of plaintiff's claims would be decided pursuant to ERISA.[11] Defendant filed its motion for summary judgment on August 5, 2014,[12] and plaintiff filed her motion for summary judgment on August 12, 2014.[13]

## STANDARD OF LAW

### I. Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point

---

[7] R. Doc. No. 38-8, at 26 (identified as M-0147).
[8] *See, e.g.*, R. Doc. No. 38-7, at 18 (identified as M-0109).
[9] R. Doc. No. 1-1, at 4-5; R. Doc. No. 5, at 2-3.
[10] R. Doc. No. 1-1, at 5.
[11] R. Doc. No. 32, at 9.
[12] R. Doc. No. 36.
[13] R. Doc. No. 38.

out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**II. ERISA**

ERISA permits a beneficiary of a welfare plan to initiate legal action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Nevertheless, judicial review of a plan administrator's benefits determination is not limitless, but limited. Reviewing courts are required to show a certain amount of deference to administrative determinations because, as the U.S. Supreme Court recently reiterated: "Deference promotes efficiency by encouraging resolution of benefits disputes through internal administrative

proceedings rather than costly litigation. It also promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from de novo judicial review." *Conkright v. Frommert*, 599 U.S. 506, 517 (2010).

A court must review a denial of ERISA benefits under a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997). If a plan "gives the Plan Administrator the discretionary authority to construe the Plan's terms and to render benefit decisions," then a court must review the administrator's decisions subject to an abuse of discretion standard. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009). The Court has previously examined the policy and determined that MetLife has such authority.[14] Accordingly, the Court will review MetLife's decision for an abuse of discretion.[15]

The Fifth Circuit has outlined a "two-step analysis in determining whether a plan administrator abused its discretion in construing plan terms." *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 227 (5th Cir. 2004) (citing *Rhorer v. Raytheon En'rs & Const'rs, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999)). As the Fifth Circuit has explained:

> First, we determine whether the [administrator's] determination was legally correct. If so, the inquiry ends and there is no abuse of discretion. Alternatively, if the court finds the administrator's interpretation was legally incorrect, the court must then determine whether the administrator's decision was an abuse of discretion. Only upon reaching this second step must the court weigh as a factor whether the administrator operated under a conflict of interest.

---

[14] R. Doc. No. 32, at 9-12.
[15] Although certain imprecise language in plaintiff's motion for summary judgment may suggest that plaintiff contends this Court should apply a de novo standard of review, *see* R. Doc. No. 38-1, at 6, plaintiff does not appear to seriously dispute that an abuse-of-discretion standard applies, *see* R. Doc. No. 47, at 2.

4

*Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009) (citations omitted).

In determining whether an administrator's interpretation of a plan term is legally correct, a court must consider three factors: "'(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan.'" *Id.* at 258 (quoting *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008)). The most important factor in this analysis is "whether the administrator's interpretation was consistent with a fair reading of the plan." *Id.* (citing *Crowell*, 541 F.3d at 313).

As stated, if a court finds that the administrator's interpretation was not legally correct, then it must resolve whether an administrator has abused its discretion. A plan administrator abuses his discretion where the decision is not "'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999)). A court must find that an administrator has abused its discretion only when "the plan administrator acted arbitrarily or capriciously." *Holland*, 576 F.3d at 246 (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (citing *Meditrust*, 168 F.3d at 215)). A court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Id.* at 247 (internal quotation marks omitted) (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)).

A plan administrator's factual determinations "are always reviewed for abuse of discretion." *Vercher*, 379 F.3d at 226. Again, a plan administrator's decision to deny benefits must be "'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Lain*, 279 F.3d at 342 (quoting *Vega*, 188 F.3d at 299). If the administrator's decision to deny a claim is supported by "'some *concrete evidence* in the administrative record,'" the administrator did not abuse its discretion. *Id.* (quoting *Vega*, 188 F.3d at 302). A reviewing court cannot substitute its judgment for that of the plan administrator. *McDonald v. Hartford Life Grp. Ins. Co.*, 361 F. App'x 599, 608 (5th Cir. 2010).

The Court may consider whether MetLife, in its dual role as insurer and plan administrator, had a conflict of interest that affected the benefits determination. *Id.* However, the U.S. Supreme Court has stated that weighing a conflict of interest as a factor does not "impl[y] a change in the *standard* of review, say, from deferential to *de novo* review." *Met. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). "Quite simply, 'conflicts are but one factor among many that a reviewing judge must take into account.'" *Holland*, 576 F.3d at 247-48 (quoting *Glenn*, 554 U.S. at 116).

## DISCUSSION

The Plan contains the following provision for accidental death:

> **ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE**
> If You or a Dependent sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss described in the SCHEDULE OF BENEFITS, Proof of the accidental injury and Covered Loss must be sent to Us. When We receive such Proof We will review the claim and, if We approve it, will pay the insurance in effect on the date of the injury.
> **Direct and Sole Cause** means that the Covered Loss occurs within 12 months of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes.[16]
> . . . .

---

[16] R. Doc. No. 38-6, at 10 (identified as M-0070).

> **Exclusion for Intoxication**
> We will not pay benefits under this section for any loss if the injured party is intoxicated at the time of the incident and is the operator of a vehicle or other device involved in the incident.
> **Intoxicated** means that the injured person's blood alcohol level met or exceeded the level that creates a legal presumption of intoxication under the laws of the jurisdiction in which the incident occurred.[17]

MetLife denied benefits to plaintiff[18] and reaffirmed its denial after two appeals because of the intoxication exclusion.[19] According to the toxicology report, decedent's blood alcohol concentration was 0.37%.[20] The parties do not contest this finding,[21] and such level is over four times the legal limit in Louisiana. *See* La. Rev. Stat. § 14:98(A)(1) ("The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when: (a) The operator is under the influence of alcoholic beverages; or (b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood . . . ."). As MetLife stated in its October 11, 2013 letter: "[A]lcohol impairs the drinker's judgment and physical and mental reactions. As the Plan states that Accidental Death benefits are not payable if the operator of a vehicle is intoxicated at the time of the incident, your clients' claims were denied on May 21, 2012."[22]

Plaintiff's objection to MetLife's determination is based primarily on the Orleans Parish Coroner's report regarding decedent's autopsy. The report lists the date and time of death as

---

[17] R. Doc. No. 38-6, at 11 (identified as M-0071).
[18] *See* R. Doc. No. 38-9, at 5-7 (identified as M-0155 to -0157).
[19] *See* R. Doc. No. 38-10, at 9-11 (identified as M-0189 to -0191); R. Doc. No. 38-10, at 23-26 (identified as M-0203 to -0206).
[20] R. Doc. No. 38-9, at 2 (identified as M-0152).
[21] R. Doc. No. 42-1, at 11; *see also* R. Doc. No. 36-13, at 4; R. Doc. No. 39-1, at 2.
[22] R. Doc. No. 38-10, at 24 (identified as M-0204).

March 18, 2011, at 8:08 A.M.[23] Plaintiff therefore concludes that "Decdent lived for thirteen hours before he [died] from lack of medical attention" and that he "would have survived had medical attention been timely available."[24] Plaintiff contends that "[t]he negligence of the police officers and lack of medical attention are the sole cause of Decedent's death," so the intoxication exclusion should not apply because "[t]he presence of alcohol in Decedent's blood stream play[ed] no role in Decedent's demise."[25]

Following the denial of plaintiff's first appeal, plaintiff provided MetLife with a report from Dr. Olga Krivitsky in support of her contention.[26] Dr. Krivitsky stated that it was her medical opinion that if decedent had "received prompt medical attention at the time of the accident, or shortly thereafter, he would [have] had a good chance of survival."[27] Dr. Krivitsky came to this conclusion "based on the reports on the condition of the decedent's vital organs at the time of death."[28] Dr. Krivitsky also stated that "[t]he fact that the decedent did not expire from his wounds until twelve to thirteen hours later is my basis for this conclusion."[29]

Upon receipt of Dr. Krivitsky's report, MetLife sought the opinion of Dr. Elyssa Del Valle.[30] Dr. Del Valle concluded that, "[w]ithin a reasonable degree of medical certainty, it can be determined that the decedent's injuries were such that he would have died shortly after the crash. . . . There would not have been any time at all to treat these life threatening injuries. He was found dead. These types of injuries are lethal."[31] With respect to the coroner's report, Dr.

---

[23] R. Doc. No. 38-8, at 2 (identified as M-0123).
[24] R. Doc. No. 38-1, at 4.
[25] R. Doc. No. 38-1, at 4.
[26] R. Doc. No. 38-10, at 12-13 (identified as M-0192 to -0193).
[27] R. Doc. No. 38-10, at 13 (identified as M-0193).
[28] R. Doc. No. 38-10, at 13 (identified as M-0193).
[29] R. Doc. No. 38-10, at 13 (identified as M-0193).
[30] R. Doc. No. 38-10, at 21 (identified as M-0201).
[31] R. Doc. No. 38-10, at 21 (identified as M-0201).

Del Valle stated: "The time of death given by the coroner was the time he was found, not the time of his actual death. He was in full rigor as of the time of [the] autopsy. He died in my opinion at the time of the accident."[32]

Dr. Del Valle also addressed Dr. Krivitsky's opinion, and noted that Dr. Krivitsky's opinion "is likely based on the time of death given by the coroner as Dr. Krivitsky reiterates in his hypothesis that he lived for 13 hours after [the] accident."[33] Dr. Del Valle suggested: "If there is any doubt, please ask the coroner for his opinion and explanation as to why the time of 8 am 3/18/11 was given as [the] time of death. I am fairly certain within reasonable medical certainty that the response would be that this was the time he was found in [the] grass. He was in full rigor when examined at 10 am."[34] Dr. Del Valle ended her report by reiterating that "the alcohol level noted would contribute to the accident" and that "[m]ultiple trauma such as described in [the] autopsy would result in immediate death."[35]

MetLife's October 11, 2013 letter to plaintiff, which denied her appeal for the second time, stated in pertinent part:

> As suggested by the expert physician, [MetLife] contacted the Coron[e]r's office for further explanation. The Chief Inves[t]igator of the Coroner's Office confirmed in a telephone conversation that the Coroner's Office cannot by law speculate what the time of death may have been, but can only indicate the date and time of when the decedent's body was observed and pronounced. The Autopsy was performed at 10:10 am on March 18th at which time the body was in full rigor, concluding that Mr. McGinn had been deceased for quite some time.[36]

---

[32] R. Doc. No. 38-10, at 22 (identified as M-0202).
[33] R. Doc. No. 38-10, at 22 (identified as M-0202).
[34] R. Doc. No. 38-10, at 22 (identified as M-0202).
[35] R. Doc. No. 38-10, at 22 (identified as M-0202).
[36] R. Doc. No. 38-10, at 25 (identified as M-0205).

9

Accordingly, MetLife affirmed its denial of accidental death benefits based on the intoxication exclusion.[37]

As stated above, factual determinations "are always reviewed for abuse of discretion." *Vercher*, 379 F.3d at 226. MetLife's decision to deny benefits must be upheld by this Court if it is "'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Lain*, 279 F.3d at 342 (quoting *Vega*, 188 F.3d at 299). If MetLife's decision to deny plaintiff's claim for accidental death benefits is supported by "'some *concrete evidence* in the administrative record,'" then MetLife did not abuse its discretion. *Id.* (quoting *Vega*, 188 F.3d at 302). This Court cannot substitute its judgment for that of the plan administrator. *McDonald*, 361 F. App'x at 608.

Based on the facts presented in the administrative record, the Court finds that MetLife did not abuse its discretion. MetLife's conclusion that decedent's intoxication contributed to his death is supported by Dr. Del Valle's report, which is a piece of "concrete evidence" that "clearly supports the basis for its denial." *See Lain*, 279 F.3d at 342. Furthermore, Dr. Kravitsky's report and opinion are undermined by their reliance on the time of death listed on the coroner's report, which clearly corresponds with the time that decedent's body was discovered and which the Coroner's office stated was not representative of an actual time of death.[38]

---

[37] R. Doc. No. 38-10, at 25 (identified as M-0205).
[38] Plaintiff objects that the Coroner's office's statement should not be considered by the Court because it is inadmissible hearsay. R. Doc. No. 39-1, at 2. However, an ERISA "administrator is not a court. It is not bound by the rules of evidence." *Karr v. Nat'l Asbestos Workers Pension Fund*, 150 F.3d 812, 814 (7th Cir. 1998) (citing *Pierre v. Conn. Gen. Life Ins. Co./ Life Ins. Co. of N. Am.*, 932 F.2d 1552, 1562 (5th Cir. 1991)). Hearsay evidence may be considered by an ERISA administrator, but "by itself, hearsay evidence cannot support a plan administrator's finding unless the evidence 'meet[s] certain indicia of reliability.'" *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 511 (5th Cir. 2013) (quoting *Pierre*, 932 F.2d at 1562-63).

In this case, the alleged hearsay statements were made directly to MetLife in response to MetLife's inquiry, and the statement is corroborated by Dr. Del Valle's opinion, indicating the

Plaintiff asserts that MetLife "ignored and rejected the documented evidence and other medical evidence that was submitted by public records."[39] However, as detailed above, the Court finds that MetLife considered the evidence presented by plaintiff, including the Coroner's report. To the extent that plaintiff would draw a different conclusion from those records,[40] such an argument is immaterial because there is "'evidence, *even if disputable*, that clearly supports the basis for its denial.'" *Lain*, 279 F.3d at 342 (emphasis added) (quoting *Vega*, 188 F.3d at 299). MetLife has rejected plaintiff's assertion that "[t]he lack of medical treatment is an interceding accident and is separate and apart and is not related to alcohol,"[41] and the Court finds that doing so was not an abuse of discretion.

Plaintiff also reasserts her contention that the claims process was fundamentally unfair because the same person, Marie O'Dell, allegedly handled plaintiff's claim at all stages of review,[42] and plaintiff asserts that "the adjuster/administrator will not admit making a mistake

---

alleged hearsay's reliability. *See Pierre*, 932 F.2d at 1563; R. Doc. No. 38-10, at 25 (identified as M-0205). Moreover, even without the Coroner's office statement, the Court would still find that MetLife did not abuse its discretion because its decision was supported by other "concrete evidence," such as Dr. Del Valle's report.

[39] R. Doc. No. 38-1, at 6; *see also* R. Doc. No. 38-1, at 11

[40] Plaintiff also asserts, "A public record cannot be refuted absent [an] allegation of fraud or by [a] recant[ing] Affidavit of the coroner or police report." R. Doc. No. 38-1, at 10. However, plaintiff provides no authority in support of this statement, and plaintiff's contention that MetLife should have obtained affidavits from the Coroner and other investigators is similarly unsupported. *See* R. Doc. No. 38-1, at 10-11.

[41] R. Doc. No. 38-1, at 13.

[42] *See, e.g.*, R. Doc. No. 47, at 2 ("This writer has never seen such an absurd scenario and Defendant has not provided any case that exists to this Court showing any Court ever at any time allow[ing] such an abuse of due process. . . . [T]his Court has to question bias, prejudice, and fairness in this process and in applying discretionary standards."); *see also, e.g.*, R. Doc. No. 38-1, at 6 ("The Court does not want to hear again how Defendant defies logic for due process and fairness to be melted [sic] out by Ms. O'Dell who denied the original claim as adjuster and then acted as administrator and supported her previous flawed decision and denied the claim on appeal.").

and therefore will always support its decision and deny all appeals as done here."[43] Plaintiff already raised this issue in connection with its first motion for summary judgment and, as the Court stated in its July 10, 2014 order and reasons, "plaintiff's due process argument 'is both legally and factually inaccurate.'"[44]

Plaintiff has not provided any new arguments or cited any authority that was not previously considered by the Court. Moreover, plaintiff's assertions are factually inaccurate because, as MetLife notes, "the original denial of the claim for Accidental Death benefits was not handled by Ms. O'Dell."[45] Although such information was not previously in this Court's record, the undisputed administrative record reflects that Ms. O'Dell was not assigned to the original review of plaintiff's claim.[46] Accordingly, plaintiff's contention is without merit.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion is **DENIED** and defendant's motion is **GRANTED**.

**IT IS FURTHER ORDERED** that all of plaintiff's claims in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, September 8, 2014.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[43] R. Doc. No. 39-1, at 2.
[44] R. Doc. No. 32, at 13 (quoting *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 598 (5th Cir. 1994)).
[45] R. Doc. No. 43, at 3-4.
[46] R. Doc. No. 38-9, at 21 (identified as M-0171); *see also* R. Doc. No. 38-14, at 10 (identified as M-0308).